UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 0:21-cv-61163-RKA

ERRON WILLIAMS,

    Plaintiff,

v.

HEALTHCARE REVENUE RECOVERY
GROUP, LLC d/b/a ACCOUNT RESOLUTION
SERVICES,

    Defendant.
_____/

## DEFENDANT, HEALTHCARE REVENUE RECOVERY GROUP, LLC D/B/A ACCOUNT RESOLUTION SERVICES' MOTION FOR JUDGMENT ON THE PLEADINGS WITH INCORPORATED MEMORANDUM OF LAW

Defendant, Healthcare Revenue Recovery Group, LLC d/b/a Account Resolution Services ("Defendant" or "ARS"), by and through its undersigned counsel, pursuant to Fed. R. Civ. P. 12(c) and S.D. Fla. 7.1, files this Motion for Judgment on the Pleadings as to Plaintiff's Complaint in its entirety, *see generally* [**DE 1**], and in support thereof, states the following:

### I. BACKGROUND

1. On May 14, 2021, Plaintiff initiated the instant individual action against Defendant, Healthcare Revenue Recovery Group, LLC for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* (the "FDCPA"), and the Florida Consumer Collection Practices Act, *et. seq.*, Florida Statutes (the "FCCPA") in the County Court of Broward County. The Defendant timely removed the action based on federal question jurisdiction. *See generally* [**DE 1**].

2. Plaintiff's assertions and arguments against ARS seek statutory damages in that Defendant allegedly "transmitted Plaintiff's personal information to a third-party" **[DE 1, at ¶ 20]** in violation of Section 1692c(b).

3. Plaintiff further asserts that Defendant used a "letter vendor" which received certain information in order to print, fold, and mail a letter to the Plaintiff.

4. Plaintiff attached the subject letter to the Complaint as Exhibit A; and thus, Plaintiff disclosed to the general public his name, address, account information, and account balance.

5. The letter is dated May 15, 2020.

6. During the period in which the subject letter was mailed to the consumer, the Defendant was acting in reliance upon the fact that no federal court had issued an opinion finding that the use of a letter vendor in aiding the conveyance of letters violated the FDCPA. At the time, ARS was acting in reliance upon the October 29, 2019, decision in which the Middle District of Florida, Tampa Division issued an Order granting Defendant's Motion to Dismiss in *Hunstein v. Preferred Collection and Management Services, Inc.,* 2019 U.S. Dist. LEXIS 187061; 2019 WL 5578878 (M.D. Fla. 2019), on the exact issue in this case.

7. The district court found in *Hunstein* that "consequently, when determining whether the transmission of information to a third party constitutes a violation of the FDCPA, it is important to consider whether the communication makes an express or implied demand for payment." *Kinlock v. Wells Fargo Bank, N.A.,* 636 F. App'x 785, 787 (11th Cir. 2016) *(affirming dismissal of FDCPA claim because the complaint failed to allege that the communication made a demand for payment). Id. at 5-6.*

8. As such, ARS was acting in accordance with an actual opinion that found that such conduct was not a violation of the FDCPA.

2

9. On April 21, 2021, nearly one (1) year after the correspondence was mailed to the Plaintiff, the Eleventh Circuit in *Hunstein v. Preferred Collection and Management Services, Inc.,* 994 F.3d 1341 (11th Cir. 2021), reversed the district court's order.

10. Since April 21, 2021, chaos has been unleashed within the federal district courts of the Eleventh Circuit since numerous "copy-cat" lawsuits have been filed to take advantage of the reversal in *Hunstein* against the debt collection industry; the industry has relied upon the use of Letter Vendors to assist in the production of letters for the past thirty years without issue.

11. Now, in this case, Plaintiff similarly alleges that the transmittal of personal debt-related information to a third-party vendor constitutes a communication in connection with the collection of a debt in violation of the FDPCA and FCCPA. *Id.; see also Hunstein v. Preferred Collection and Management Services, Inc.,* 994 F.3d 1341 (11th Cir. 2021).

12. On June 8, 2021, Defendant, ARS filed its Answer and Affirmative Defenses and asserted that Plaintiff's reliance on the *Hunstein* decision was a matter of first impression and that this Court should not apply the decision against the Defendant retroactively. *See Hunstein,* 994 F.3d 1341; *see also* [**DE 5**].

13. According to the Eleventh Circuit's docket in the *Hunstein* appeal, the debt collector has filed a Motion for Re-hearing *en banc,* and numerous amicus briefs have been filed by interested persons. A decision as to whether the Eleventh Circuit will grant the Motion for Re-hearing *en banc* is still pending.

14. In addition, on June 25, 2021, the United States Supreme Court issued its opinion in *TransUnion v. Ramirez,* ___ S. Ct. ___, 2021 WL 2599472 (2021), articulating a more direct analysis of Article III standing by stating the requirement to have actual concrete harm to maintain jurisdiction of a federal court.

15. The *Hunstein* appellate decision and re-hearing motion specifically address the lack of Article III standing argument which was addressed in the original order of the Court.

16. This Motion, under the circumstances, addresses the fact that ARS should not be bound retroactively to the *Hunstein* decision since the letter dated May 15, 2020, occurred during a period of time in which existing case law supported that the use of a letter vendor DOES NOT violate the FDCPA, nearly one (1) year before the Eleventh Circuit's decision.

17. Thus, the instant motion is ripe for adjudication for judgment on the pleadings as to Counts I and II of Plaintiff's Complaint. *See* Fed. R. Civ. P. 12(c).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) states, in pertinent part, that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P. *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). That is, to survive dismissal, the complaint must state a claim for relief that is plausible on its face. *Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018) (citing *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002)).

"To state a claim, a complaint must include allegations plausibly suggesting (not merely consistent with) the plaintiff's entitlement to relief." *Id.* (internal quotations and citations omitted). All well-pleaded facts in the complaint are accepted as true and viewed in the light most favorable to the plaintiff. *Id.* (citation omitted). "Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *King*

*v. Akima Glob. Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019) (per curiam) (citing *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005)).

"If it is clear from the pleadings that the plaintiff is not entitled to relief under any set of facts consistent with the complaint, the district court should dismiss the complaint." *Id.* (citing *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002)).

Simply put, Plaintiff's Complaint, *see e.g.* [**DE 1**], fails to meet this standard because the balance of equities is in favor of applying the *Hunstein* decision *prospectively* – not retroactively – to the instant action. *Hunstein,* 994 F.3d 1341 (11th Cir. 2021).

### III. ARGUMENTS AND AUTHORITIES

The Motion is due to be granted because Plaintiff is attempting to retroactively apply *Hunstein*, 994 F.3d 1341 (11th Cir. 2021) – a case of first impression – which, was decided on April 21, 2021, to the case at bar. "Generally, new rules of law are applied retroactively as well as prospectively." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 544 (11th Cir. 2002) (en banc). However, in 1971, the Supreme Court allowed for prospective-only application of newly announced rules in civil cases. *See Chevron Oil Co. v. Huson*, 404 U.S. 97, 105-109, 92 S. Ct. 349, 354-356, 30 L. Ed. 2d 296 (1971).

Accordingly, the Eleventh Circuit has ruled that in deciding the appropriateness of a purely prospective ruling versus a purely retroactive ruling in civil cases to parties before it and cases still open on direct review, a court must apply the factors set forth in *Chevron Oil. Chevron Oil*, 404 U.S. 97. These factors include the following:

> (1) "the decision must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied **or by deciding an issue of first impression whose resolution was not clearly foreshadowed**;"

5

>   (2) "a court must look to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation;" and
>
>   (3) "a court must look to the inequity imposed by retroactive application."

*Glazner v. Glazner*, 347 F.3d 1212, 1216 (11th Cir. 2003) (citing *Chevron Oil*, 404 U.S. at 106–07); *see also Stansell v. Revolutionary Armed Forces of Colom* (FARC), No. 8:09-cv-2308-T-26MAP, 2013 U.S. Dist. LEXIS 200709, at *12 (M.D. Fla. Feb. 26, 2013) (same proposition). Thus, against this backdrop, the *Hunstein* decision as applied to FDCPA and FCCPA claims begins with applying the three factors enumerated in *Chevron Oil*. *See Chevron Oil*, 404 U.S. at 106-07.

   a.   The First Chevron Oil Factor.

Applying the first factor, a Court would consider whether the decision to be applied – *Hunstein* – would be a matter of first impression within this Circuit and contrary to the industry's utilization of third-party vendors for <u>more than 25 years</u>. *See Hunstein*, 994 F. 3d at 1341. In fact, the *Hunstein* court acknowledged the consequence of its decision and the substantial costs associated with rolling back the industry's decades-long reliance on vendors by stating the following:

>   It is not lost on us that our interpretation of § 1692c(b) **runs the risk of upsetting the status quo in the debt-collection industry**. We presume that, in the ordinary course of business, debt collectors share information about consumers not only with dunning vendors like Compumail, but also with other third-party entities. Our reading of § 1692c(b) may well require debt collectors (at least in the short term) to in-source many of the services that they had previously outsourced, **potentially at great cost**. We recognize, as well, that those costs may not purchase much in the way of "real" consumer privacy, as we doubt that the Compumails of the world routinely read, care about, or abuse the information that debt collectors transmit to them. Even so, our obligation is to interpret the law as written, whether or not we think the resulting consequences are particularly sensible or desirable. Needless to say, if Congress thinks that we've misread § 1692c(b)—or even that we've properly read it

6

>but that it should be amended—it can say so. *See id.* (Emphasis added).

As stated above, the *Hunstein* court recognized that its ruling was not clearly foreshadowed as a potential violation of the FDCPA and its effect on debt collection processes moving forward. The decision upended the long-standing and relatively routine business practice of debt collectors using third-party vendors to manage, service, and collect outstanding debt.

Certainly, this Court can appreciate the "rug pulling" impact the Eleventh Circuit's reversal has had on ARS as well as others in the collection industry relying on the original Court's October 2019 Order finding that the exact same conduct was NOT a violation of the FDCPA. The May 15, 2020 letter sent to Plaintiff was mailed with the understanding that it was not violating the FDCPA or the FCCPA.

For this same reason, the defendant in *Hunstein* filed a Petition for Rehearing *En Banc*[1] with the Eleventh Circuit; and thus, it is unclear whether the *Hunstein* decision will remain final. Particularly, when the United States Supreme Court made two important points in its *TransUnion v. Ramirez* decision. First, it appears that a focal point of any re-rehearing with review is whether the plaintiff had maintained Article III standing to bring such an action. If the Eleventh Circuit determines that Hunstein lacked standing, the opinion will be vacated and void. Second, and more specific to the merits of the case, Justice Kavanaugh stated on footnote 6, "*to the employees within TransUnion and to the vendors that printed and sent mailings that the class members received…. In any event, it is unavailing. Many American courts did not traditionally recognize intra-company*

---

[1] *Hunstein v. Preferred Collection Management Services, Inc.*, USCA11 Case No. 19-14434-HH, Appellee Preferred Collection and Management Services, Inc.'s Petition for Rehearing and For Rehearing *En Banc*, filed on May 26, 2021.

*disclosures as actionable publications for purposes of the tort of defamation."* TransUnion, 594 U.S. \_\_\_\_, fn 6 (2021).

Along these lines, as an interpretative first impression case, the *Hunstein* holding will likely have implications within the retroactive one-year limitation period of filing suit. For example, in *Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995), the Eleventh Circuit held that the FDCPA's statute of limitations begins to run upon a defendant's "last opportunity to comply with the FDCPA." The FDCPA's one-year statute of limitations sought to limit the number of suits brought by consumers against debt collectors. The FDCPA case law disfavors the notion of a continuing violation or other doctrines that would permit later-in-time conduct to resurrect otherwise time-barred violations. *See, e.g., Gajewski v. Ocwen Loan Servicing*, 650 Fed. Appx. 283, 2016 U.S. App. LEXIS 9548, 2016 WL 3006896, at *2 (7th Cir. May 25, 2016). But the *Hunstein* decision has had the opposite effect of limiting judicial economy and FDCPA litigation, as discussed below. Thus, the first *Chevron Oil* factor weighs against the retroactive application of the *Hunstein* decision.

    b.   The Second Chevron Oil Factor.

As to the second *Chevron Oil* factor, the Court would examine whether retroactive application of *Hunstein* would further or hinder the rule's operation. *See Hunstein*, 994 F.3d at 1341. In *Hunstein*, the Eleventh Circuit held that a debt collector violated 15 U.S.C. § 1692c(b) when it electronically transmitted the plaintiff's data to its dunning-letter vendor without the plaintiff's consent. *See id*. at 1344, 1352. The FDCPA was enacted to prohibit abusive debt collection practices that can lead to an invasion of privacy "without imposing unnecessary restrictions on ethical debt collectors." 15 U.S.C. § 1692(e); S. R.E.P. 95-382, 1, 1977 U.S.C.C.A.N. 1695, 1696. Here, the ministerial, electronic transmission of data to an agent of a

8

debt collector to facilitate the mailing of a letter to a consumer is not abusive or invasive as contemplated by the FDCPA. As such, the *Hunstein* court's broad interpretation of the FDCPA has opened the flood gates for FDCPA litigation. *Hunstein,* 994 F.3d at 1341.

Since the *Hunstein* decision was handed down, the retroactive impact of the *Hunstein* opinion has generated at least **300** individual and class action "copy-cat" lawsuits against debt collectors since the date of the opinion on April 21, 2021. Consequently, the *Hunstein* court's broad interpretation of the FDCPA has opened the flood gates for consumers to file FDCPA claims, similar to this case for actions taken previous to the reversal of the district court's ruling. For these reasons, the second factor in *Chevron Oil* also weighs against the retroactive application[2].

As stated by Judge Newsom in the opinion:

> We presume that, in the ordinary course of business, debt collectors share information about consumers not only with dunning vendors like Compumail, but also with other third-party entities. Our reading of § 1692c(b) may well **require debt collectors (at least in the short term) to in-source many of the services that they had previously outsourced, potentially at great cost**.

While the collection industry is forced to scramble to internalize the administrative functions of printing, folding, stuffing, and mailing letters to consumers within the Eleventh Circuit, and likely, nationwide, fairness and equity support allowing debt collectors to act to comply with the ruling and not be punished retroactively for letters mailed prior to the publication of this new decision.

---

[2] It is recognized that actions in which information was conveyed to letter vendors and other third-party entities prior to April 21, 2021, were taken without notice or warning of any alleged wrongdoing. The second factor is not impacted for communications after a reasonable time after the April 21, 2021 decision was issued and time to conform to the ruling was provided to the debt collector's conduct within the Eleventh Circuit.

      c.    The Third Chevron Oil Factor.

Applying the third *Chevron Oil* factor, the application of the *Hunstein* opinion retroactively creates injustice and undue hardship upon the Defendant and debt collectors alike. *See State Farm Fire & Casualty Co. v. Sweat*, 547 F. Supp. 233 (N.D. Ga. 1982). The difficulties faced by many debt collectors to mass-mail numerous collection letters to consumers that would otherwise be sent to its letter vendors are significant and costly. Although the defendant's vendor in *Hunstein* is a letter vendor, the case can be used to implicate a variety of other vendors, including target loan services, sub servicers, and others in both single action and action litigation across a wide range of financial products, as opposed to "pure" debt collection.

It should be noted that the Plaintiff, through Plaintiff's counsel, actually published the content of the correspondence in open public as an exhibit to the Complaint and now claims "reputational harm" in the alleged conveyance of information through a letter vendor to print, fold, and mail the letter[3]. Given the substantial resources that the debt collector industry alone will have to endure from the *Hunstein* decision by mass-mailing in-house, a court would likely balance the equities in favor of the nonretroactive effect under the last *Chevron Oil* factor. *See Hunstein,* 994 F.3d at 1341.

After applying the three factors enumerated in *Chevron Oil,* this Court should find that Plaintiff's attempt to apply the *Hunstein* decision retroactively fails as a matter of law. As such, this Court should follow suit with Eleventh Circuit precedent and grant judgment on the pleadings as to Plaintiff's Complaint. [**DE 1**].

---

[3] It can be easily assumed that no human actually saw the content of the letter as it passed electronically from ARS to the consumer based on encryption protocols and privacy policies to comply with the FDCPA and HIPAA.

**WHEREFORE,** Defendant, Healthcare Revenue Recovery Group, LLC, pursuant to Fed. R. Civ. P. 12, respectfully requests the Court to grant Defendant's Motion for Judgment on the Pleadings as to Counts I and II of Plaintiff's Complaint [**DE 1**], award attorneys' fees, and any other relief that the Court deems appropriate.

Dated: July 30, 2021.

*/s/ Ernest H. Kohlmyer, III*
Ernest H. Kohlmyer, III, Esquire
Florida Bar No.: 0110108
skohlmyer@shepardfirm.com
Shepard, Smith, Kohlmyer & Hand, P.A.
2300 Maitland Center Parkway
Suite 100
Maitland, Florida 32751
Telephone (407) 622-1772
Facsimile (407) 622-1884
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on **July 30, 2021**, with the Clerk of the Court by using the electronic filing system. I further certify that the foregoing has been sent via electronic transmission to the counsel of record.

*/s/ Ernest H. Kohlmyer, III*
Ernest H. Kohlmyer, III, Esquire
Florida Bar No.: 0110108
skohlmyer@shepardfirm.com
Shepard, Smith, Kohlmyer & Hand, P.A.
2300 Maitland Center Parkway
Suite 100
Maitland, Florida 32751
Telephone (407) 622-1772
Facsimile (407) 622-1884
*Attorneys for Defendant*